IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case: 1:24–mc–00029
Assigned To : Bates, John D.
Assign. Date : 2/27/2024
Description: MISC (O–Deck)

UNITED STATES OF AMERICA,

v.

TYLER TEW,

      Defendant.

Case No. 22-cr-27-TSC-RMM

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PRESS COALITION'S MOTION TO UNSEAL

Pursuant to Local Criminal Rule 57.6, the Press Coalition[1] respectfully requests that the Court unseal all records not currently open to the public related to the sentencing of Defendant Tyler Tew, including but not limited to: the Government's response to Tew's November 1, 2023 status report (Dkt. 56) and Tew's corresponding reply and motion to seal (Dkt. 57); the Government's sentencing memorandum (Dkt. 58) and Tew's corresponding reply and motion to seal (Dkt. 59); the complete transcript of Tew's November 28, 2023 sentencing hearing; and the Government's response to Tew's motion to modify conditions of probation (Dkt. 65).

These filings (together, the "Sealed Judicial Records") are all subject to the First Amendment and common law rights of public access. Yet the public docket provides little explanation as to why, despite the strong presumption of transparency in this Circuit, these judicial records are not available to the public. Indeed, what explanation it does offer indicates

---

[1] Members of the Press Coalition are Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, CBS Broadcasting, Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc. Los Angeles Times Communications LLC, publisher of The Los Angeles Times, NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, POLITICO LLC, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post.

that some of the sealed information "closely mirrors <u>public</u> statements the Court made at the Sentencing." *See* First Jan. 30, 2024 Minute Order (emphasis added). The Court should therefore grant the Press Coalition's motion and provide access to the Sealed Judicial Records.

## I.   BACKGROUND

This lawsuit is one of many cases arising out of the riot at the United States Capitol on January 6, 2021, "the most significant assault on the Capitol since the War of 1812." *Trump v. Thompson*, 20 F.4th 10, 18-19 (D.C. Cir. 2021). Defendant Tyler Tew, a commercial airline pilot, admitted to entering the Capitol building on January 6 and pleaded guilty to four counts under 18 U.S.C. § 1752(a)(1) & (2) and 40 U.S.C. § 5104(e)(2)(D) & (G). *See* Tew's Sentencing Statement (Dkt. 52) at 2-3, 5. According to the Government, Tew "expressed an intention to storm the Capitol" hours "before he actually arrived on U.S. Capitol grounds," he made "[t]hree attempts to get inside the U.S. Capitol building over the span of at least two hours," and he sent "[n]umerous texts and social media posts bragging about encounters with police officers and encouraging others to occupy the building and making open statements that all of this was geared towards overthrowing the government." *See* Ex. A (Nov. 28, 2023 Hrg. Tr.) at 16:1-14, 31:7-13.

After pleading guilty and submitting his sentencing memo, Tew filed a Status Memo and Demand for Discovery to "advise[] this Court of recent developments in this matter in advance of his Sentencing Hearing." Dkt. 55 at 1. Specifically, according to Tew, four weeks prior to his sentencing, "the Government disclosed to Counsel for Mr. Tew that it has materials taken from Mr. Tew's cellular telephone – UNRELATED to the charges in this case and having nothing to do with the events of January 6 – that it intends to introduce at sentencing." *Id.* at 3. Tew wrote that he "objects to the Government making ANY use of this material, for ANY purpose, until the legality of the seizure can be fulling litigated," and he further requested that the Court order the Government to answer questions about the "materials" it located and "direct the Government to

not make any public filing that refers to the nature of the information which is the subject of its belated disclosure" and provide that "any filings on this subject be made under seal." *Id.* at 3-4.

The Court promptly ordered the Government "to respond to the allegations" in Tew's filing and to submit its entire response under seal. Nov. 3, 2023 Minute Order. After receiving a completely sealed response from the Government (Dkt. 56) and a completely sealed reply from Tew (Dkt. 57), the Court ruled that "the material referenced in the aforementioned filings may be introduced for a limited purpose at sentencing," but that "[s]entencing memoranda shall be filed under seal," and that "[t]he Court will consider whether such material should be unsealed at the sentencing." Nov. 16, 2023 Minute Order. These pleadings are among the judicial records that remain under seal.

Tew appeared before the Court for sentencing on November 28, 2023. That proceeding was conducted partly under seal, also remains sealed, in part, and the unredacted portion of the hearing transcript offers no further explanation as to why the Court has kept so much of the record in this matter secret. *See generally* Ex. A. All the public can see from the redacted transcript is that the "materials" at issue include "photos and recordings that the government contends were found on Mr. Tew's phone," *see id.* at 3:4-11; that the Government "discuss[ed]" those materials in its sentencing memorandum, *see id.*; that the Government views the materials as indicative that Tew "is at a higher risk of recidivism [and] does not respect the law and is in greater need of specific deterrence," *see id.* at 32:10-21; and that the materials somehow relate to "conduct that the government contends is under investigation," *see id.* at 52:3-11. Significantly, the Court indicated in that redacted transcript that it "did consider" the issues discussed and briefed under seal in determining what sentence to impose on Tew, *see id.*

The sealed filings in this case continued to play a role in the litigation of further issues. While the Court ultimately sentenced Tew to 24 months of probation, *see* Nov. 28, 2023 Minute Entry, just two months later, Tew moved to modify the conditions of his probation "to allow for international travel to Montego Bay, Jamaica" for a family vacation. *See* Tew's Mot. to Modify Conditions of Probation at 1 (Dkt. 64). The Government opposed that motion, stating that "missing a family vacation is a modest consequence of the defendant's criminal conduct on January 6, 2021." *See* Gov't Resp. at 2 (Dkt. 68). Tew then filed a reply claiming that the Government opposed his request because it wants him to "be made to suffer more than he has already," that the Government's response "drips with disdain arising from the fact that the Government did not get the sentence it advocated for," and that "[h]aving lost – and <u>with the information that was before the Court in the sealed portion of the sentencing proceeding</u> never <u>far away in the background</u> – the Government now seeks to punish not only Mr. Tew, but his children, parents and in-laws as well." *See* Tew's Reply at 2-3 (emphasis added) (Dkt. 66). Tew further asserted that the Government had improperly "quoted from and cited to this Court's 'Statement of Reasons,'" which "is restricted and not available to the public." *Id.* at 4.

The vague references to sealed judicial records continued as the Government and Tew fought further over his request to be excused from the obligations of his probation in order to vacation in Jamaica. The Court subsequently ordered the Government to "file a redacted version" of its response brief "that does not publicly disclose an excerpt from a sealed court document." First Jan. 30, 2024 Minute Order. The Court wrote that it "recognizes that the quoted text from the sealed [Dkt.] 63 Statement of Reasons in the Government's [Dkt.] 65 Response closely mirrors public statements the Court made at the Sentencing, but nevertheless has sealed the [Dkt.] 65 Response." *Id.* The Court also ordered that, "[f]or the reasons set forth

at the November 28, 2023 Sentencing, Mr. Tew's motion to strike and motion for sanctions raised in his [Dkt.] 59 Reply to Government's Sentencing Memo are hereby DENIED; Mr. Tew's [Dkt.] 57 and [Dkt.] 59 Motions to Seal are hereby GRANTED; and the Government's [Dkt.] 56 Response and [Dkt.] 58 Sentencing Memorandum will remain under seal." Second Jan. 30, 2024 Minute Order.

The Government timely filed a redacted version of its Response, Dkt. 68, as ordered. The Court then denied Tew's request to travel because "he has not established a record of compliance" and "given the nature and length of the proposed international trip." Feb. 16, 2024 Minute Order.

## II.     THE COURT SHOULD RELEASE THE SEALED JUDICIAL RECORDS

The First Amendment and common law rights of access to judicial records are "a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017) (Garland, J.). Here, both the First Amendment and common law provide a right of access to the Sealed Judicial Records that has not been overcome on the record.

### A.     The Court Should Release The Records Under The Constitutional Right of Access.

As to the Constitution: "The Supreme Court has sketched a two-stage process for resolving whether the First Amendment affords the public access to a particular judicial record or proceeding." *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring). "First the court must determine whether a qualified First Amendment right of public access exists. If so, then . . . the record or proceeding may be closed only if closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (cleaned up).

Courts follow the "experience and logic" test to determine where the constitutional right of access right to records or a proceeding. *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 9 (1986) ("*Press-Enterprise II*"). Under this test, the right of access attaches if "the place and process have historically been open to the press and general public" and if access "plays a significant positive role in the functioning of the particular process." *Id*. at 8. Applying this test, the constitutional right of access plainly attaches to sealing motions or orders. *See EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) ("A court's decrees, its judgments, its orders, are the quintessential business of the public's institutions."); *Wash. Post v. Robinson*, 935 F.2d 282, 289 (D.C. Cir. 1991) (holding that motions to seal plea agreements must be publicly docketed, and interested parties must be given notice and opportunity to be heard before sealing).

Likewise, the First Amendment protects public access to filings and proceedings related to resolution of a prosecution, including sentencing hearings and related records. *See Robinson*, 935 F.2d at 288 (First Amendment right of access applies to plea agreement); *In re Wash. Post Co.*, 807 F.2d 383, 389-90 (4th Cir. 1986) ("the First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearings themselves"); *United States v. Dare*, 568 F. Supp. 2d 242, 244 (N.D.N.Y. 2008) ("It is well-recognized that the public has a strong right to sentencing memoranda under the First Amendment and the common law right to judicial records."). As this District has observed in acknowledging a constitutional right to access sentencing filings, public oversight

> serves to check any temptation that might be felt by either the prosecutor or the court to seek or impose an arbitrary or disproportionate sentence; promote accurate fact-finding; and in general stimulate public confidence in the criminal justice system by permitting members of the public to observe that the defendant is justly sentenced.

*United States v. Harris*, 204 F. Supp. 3d 10, 15 (D.D.C. 2016) (cleaned up).

6

Where this constitutional right of access applies, "the proceedings cannot be closed unless specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14 (cleaned up). These "specific findings" must demonstrate both "a substantial probability" of harm that "closure would prevent" and that "reasonable alternatives to closure cannot adequately protect" against that harm. *Id.* at 14.

Here, however, the public docket contains <u>no</u> finding by the Court that withholding the Sealed Judicial Records is essential to preserve any higher values. To the contrary, the public docket reflects that the Court sealed multiple filings and large portions of the sentencing hearing with only the vague reference "[f]or the reasons set forth" at that sentencing hearing, *see* Second Jan. 30, 2024 Minute Order, and, as the Court informed the parties at that hearing, that it "will maintain [the] information under seal given the sensitive and private nature of what has been alleged," *see* Ex. A at 63:18-23. That falls far short of what the First Amendment requires under *Press-Enterprise II* and *Robinson*, both as a public explanation for the sealing itself, and, as the Court expressly considered the sealed information in adjudicating the dispute, as a public explanation for that decision.

Likewise, the public docket contains <u>no</u> findings that narrowly targeted redactions to the documents currently sealed in full would not suffice to protect these purported privacy interests. *See In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 91 (D.D.C. 2008) (because restrictions on First Amendment right of access must be narrowly tailored, courts must ask whether "the goal of protecting [higher values] can be accomplished by means less restrictive than prohibiting access . . . altogether"); *see also Dare*, 568 F. Supp. 2d at 245 (ordering a sealing order and a sentencing memorandum be unsealed, with limited redactions to the defendant's personal identifying

information within the memorandum); *Harris*, 204 F. Supp. 3d at 12-13, 18 (ordering that sealing memorandum and opinion be docketed with limited redactions).

Because the First Amendment access right applies to the Sealed Judicial Records, and there are no findings on the public record demonstrating that the current withholdings are essential to preserving any higher values, the Court should promptly grant the Press Coalition's motion for access.

**B.     The Court Should Release The Records Under The Common Law Right Of Access.**

The Court also should release the Sealed Judicial Records pursuant to the common law right of access. "Although [this] right is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests." *Metlife*, 865 F.3d at 663. Like the constitutional right of access, the common law right requires courts to conduct a two-stage analysis. First, courts determine whether the records at issue are "judicial records" to which there is a "strong presumption" in favor of access. *Id.* at 665-69. If they are judicial records, courts then apply the six-factor test set out in *United States v. Hubbard* to determine whether the presumption of access has been rebutted. 650 F.2d 293, 317-21 (D.C. Cir. 1980).

Under controlling case law, the Sealed Judicial Records are "judicial records" to which the public has a presumptive right of access under the common law. *See Harris*, 204 F. Supp. 3d at 14-15 (common-law right of access applied to sentencing memoranda and attachments). In *Metlife*, the D.C. Circuit explained that documents filed with the court are judicial records, even when they are filed under seal, so long as they "were filed before the . . . court's decision and were intended to influence it." 865 F.3d at 668. Here, the Sealed Judicial Records – including (and possibly not limited to) the Government's response to Tew's November 1, 2023 status report (Dkt. 56) and Tew's corresponding reply and motion to seal (Dkt. 57); the Government's

sentencing memorandum (Dkt. 58) and Tew's corresponding reply and motion to seal (Dkt. 59); the sealed portions of the sentencing hearing; and the Government's response to Tew's motion to modify conditions of probation (Dkt. 65) – clearly were intended to influence the Court in reaching a decision.  Indeed, the Court expressly stated that it "did consider" the sealed materials in deciding what sentence to impose. Ex. A at 52:3-11.  The Sealed Judicial Records are therefore "judicial records," and the same "strong presumption" of public access applies.

Because the public has a presumptive right of access to the Sealed Judicial Records under the common law, the Court should release them unless the party seeking the sealing rebuts the strong presumption under *Hubbard* and *Metlife*.  And here, neither the parties nor the Court have articulated on the record how these factors could outweigh the "strong presumption" of access to the Sealed Judicial Records.  The Court should therefore grant the Press Coalition access to the Sealed Judicial Records pursuant to the common law as well.

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court order the Sealed Judicial Records be unsealed and placed on the public docket.

Dated:  February 26, 2024          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren P. Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Coalition*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2024, I caused true and correct copies of the foregoing to be served via electronic mail and U.S. Mail on the following:

> William Lee Shipley, Jr.
> LAW OFFICES OF WILLIAM L. SHIPLEY
> PO Box 745
> Kailua, HI 96734
> 808Shipleylaw@gmail.com
>
> *Attorney for Defendant Tyler Tew*
>
>
> Kaitlin Klamann
> Kelly Elizabeth Moran
> U.S. Department of Justice
> 601 D Street NW
> Washington, DC 20530
> kaitlin.klamann@usdoj.gov
> kelly.moran@usdoj.gov
>
> *Attorneys for the United States of America*

> */s/ Charles D. Tobin*
> Charles D. Tobin (#455593)